BILLY J. WILLIAMS, OSB 901366
United States Attorney
District of Oregon
**GARY Y. SUSSMAN, OSB 873568**
Assistant United States Attorney
gary.sussman@usdoj.gov
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902
Telephone:  (503) 727-1000
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **No. 3:20-mj-00155** |
| **v.** | **MOTION TO REVOKE PRETRIAL RELEASE ORDER** |
| **KEVIN BENJAMIN WEIER**, | |
| Defendant. | ***Expedited Consideration and Oral Argument Requested*** |

During one of the nightly protests outside of the Mark O. Hatfield United States

Courthouse, defendant attempted to set fire to the wooden panels protecting the damaged

glass on the front of the courthouse.  Despite the very serious nature of this offense, despite

his history of failing to appear, despite the fact that he has lived at his current residence for

less than two weeks and has lived in Oregon for only seven months, despite his lack of ties

to the community or to his family (from whom he is estranged), Magistrate Judge

**Motion to Revoke Pretrial Release Order**                                                    **Page 1**

Beckerman ordered his release on conditions pending trial.  The United States now moves

this Court to revoke that release order and order that defendant remain in custody pending

the trial in this case.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

The Hatfield Courthouse and the neighboring Justice Center have been the epicenters

of nightly protests for well over a month.  Many of those protests have devolved into

violence as the night wore on and peaceful demonstrators went home.  Both the courthouse

and the Justice Center have been the targets of vandalism and worse, and the police officers

and federal agents tasked with protecting those buildings have come under attack.  Windows

have been shattered, security cameras and access control devices have been destroyed, the

buildings have been littered with graffiti, and protestors have repeatedly tried to breach both

buildings.  At the Justice Center, they succeeded, setting fire to a jail records office on the

first floor.

Officers and agents have been pelted with rocks, frozen water bottles, commercial-

grade fireworks, and the like.  Protestors have targeted their eyes with high-powered laser

pointers.  Fires have been set outside the courthouse, and fireworks have been thrown into

the lobby through broken windows.

Shortly after 1:00 am on July 13, 2020, federal law enforcement agents who were

inside the Hatfield Courthouse watched via a YouTube livestreamed video as a group of

protestors started a fire in the intersection of SW Third Avenue and SW Main Street, at the

southwest corner of the courthouse.  They watched as an unidentified protestor carried a

**Motion to Revoke Pretrial Release Order**                                            **Page 2**

large burning piece of wood from the intersection to the front of the courthouse, whose damaged floor-to-ceiling windows were covered with wood.  That protestor placed the burning piece of wood near the base of the wooden window covering and walked away.

Shortly thereafter, defendant approached the burning wood, picked it up, and tried to wedge it firmly up against the wooden window covering.  He made no effort to pull the burning wood away from the front of the courthouse or to extinguish the flame.  To the contrary, he repositioned the wood so that it would be even *closer* to the wood covering the windows, making it even *more likely* to ignite the wooden window covering.  He did so despite the presence of numerous federal law enforcement agents inside the courthouse. Screen captures of defendant's conduct follow.



*Defendant at the front of the courthouse, with the burning wood.*



*Defendant at the front of the courthouse, re-positioning the burning wood*

Once defendant re-positioned the burning wood, he simply walked away, leaving it

to burn.  He made no effort to remove the burning wood or to extinguish the fire.

Fortunately, other protestors did so.



*Defendant walking away from the burning plywood*

**Motion to Revoke Pretrial Release Order**                                        **Page 4**



*Defendant, after walking away from the burning wood.  The fire continues to burn behind him.*

Agents kept defendant under surveillance, but decided against arresting him until the crowd outside of the courthouse thinned out.  They took him into custody at around 3:30 a.m.  After being advised of his rights, defendant admitted being present at the front of the courthouse when the burning wood was placed there, but denied actually touching it himself.  Defendant said he recognized the protestor who carried it from the fire to the front of the courthouse, but denied knowing that protestor's name.

Defendant made his initial appearance before Judge Beckerman later that same day.  According to the Pretrial Services report, defendant has lived at his current residence in Eugene for less than two weeks.  He has lived in Oregon only seven months.  Before that, he lived a basically itinerant lifestyle in California, "couch surfing" and staying in hotels

while he did freelance work at various music festivals.  He is not married, has no children, and maintains no contact with family members.  He is currently unemployed.[1]

Although it is not extensive, defendant has a noteworthy criminal history.  He has an arrest in 2005 for vandalism and property damage in Carlsbad, California.  The disposition is unknown.  In 2012 he was charged with a felony robbery, failed to appear despite promising in writing to appear, and was eventually convicted of a misdemeanor theft.

The government sought detention as both a flight risk and a danger to the community.  Pretrial Services recommended release.  Judge Beckerman shared the government's concern about the dangerous and troubling nature of defendant's conduct, but released him nonetheless, finding that attempting to set the courthouse on fire was not part of a pattern of such conduct on defendant's part, and that he had not been *convicted* of failure to appear, even though he had, in fact, done so.  Judge Beckerman stayed her release order to allow the government to bring this appeal.

## II.    DISCUSSION

### A.    *Legal Standards.*

Review of a magistrate judge's release order is *de novo.  United States v. Koenig*, 912 F.2d 1190, 1192-93 (9th Cir. 1990).  However, the court "is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist."  *Id.* at

---

[1]  Defendant most recently worked at Mod Pizza in Eugene for a few months.  He was furloughed due to the COVID-19 pandemic, was recalled to work two weeks later, then quit.

**Motion to Revoke Pretrial Release Order**                                          **Page 6**

1193.  Rather, the court should "review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *Id.*

The Bail Reform Act provides that defendants shall be detained pending trial where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  The government bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence.  *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).  The Federal Rules of Evidence do not apply in pretrial detention proceedings.  Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f).  Thus, the parties may present evidence by proffer or through hearsay.  *Winsor*, 785 F.2d at 756.  *See also United States v. Bibbs*, 488 F. Supp. 2d 925, 925-26 (N.D. Cal. 2007).

This is not a statutory presumption case.  Thus, in determining whether detention is appropriate, this Court must weigh the factors set forth in 18 U.S.C. § 3142(g).  Those factors include (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence; (2) the weight of the evidence; (3) the defendant's history and characteristics, including the defendant's character, physical and mental condition, family and community ties, employment, financial resources, past criminal conduct, history relating to drug or alcohol abuse, record of appearing for court proceedings, and supervision status at the time of the current offense; and (4) the nature and seriousness of the danger to

any person or the community that would be posed by the defendant's release.  18 U.S.C.

§ 3142(g); *United States v. Hir*, 517 F.3d at 1081, 1086 (9th Cir. 2008).  None of those

factors support release in this case.

### B.    The Nature and Circumstances of the Offense Charged.

Defendant is charged with attempted arson of the Hatfield Courthouse.  He tried to

light the wood protecting the already-damaged front courthouse windows on fire, knowing

that there were law enforcement agents inside.[2]  That was extremely hazardous conduct that,

by its very nature, created a substantial danger to human life.  Indeed, attempted arson of a

federal building is punishable by a maximum of 20 years in prison, and carries a five-year

mandatory minimum.

### C.    The Weight of the Evidence.

The evidence against defendant is substantial.  While he was not the person who first

brought the burning wood to the front of the courthouse, he re-positioned it in a deliberate

attempt to ignite the wood covering the building's front windows.  He wedged it up against

the wood covering then turned and walked away, leaving it there to burn.  Agents got a clear

look at his face as he approached the camera that was live-streaming the event, and kept him

under surveillance until it was safe to arrest him.  A comparison between a screen capture

---

[2]  Throughout the night, protestors targeted agents who were inside the courthouse with lasers, and on occasion, agents came outside of the courthouse to prevent a breach or to effect an arrest. There is little doubt that protesters knew the courthouse was occupied, even though it was very late at night.

from the live-stream feed and a photo taken following defendant' arrest, shown below, leaves little doubt that agents arrested the right person.




### D.  Defendant's Personal History and Characteristics.

This is not defendant's first contact with the criminal justice system, nor was it the first time he has been caught damaging property.  He was charged with vandalism and property damage in California in 2005, although the disposition is unknown.  He was charged with a felony robbery in 2012.  He eventually pled guilty to a misdemeanor theft, but not until *after* he failed to appear "after written promise," as described in the Pretrial Services report.  The failure to appear charge may have been dropped as part of a plea bargain, but that does not detract from the fact that defendant promised in writing to appear, then failed to do so.

Defendant's physical and mental condition are unremarkable.  However, he maintains no ties whatsoever with his family, and his housing and employment histories are far from stable.  He has lived at his current residence less than two weeks.  He has been in Oregon only seven months.  Before that, he spent five years living an itinerant lifestyle, "couch surfing" and staying in hotels while doing freelance stagehand work at various music festivals.

He is currently unemployed, having left his most recent job at a pizza parlor after working there only a few months.  He has no financial resources; his sole source of income is food stamps.  He has no significant ties to the community, and has a prior failure to appear.  And in this case, he is facing a five-year mandatory minimum sentence upon conviction, giving him a strong incentive to flee.

### E.     The Danger Posed by Defendant's Release.

Defendant's conduct displayed a wanton disregard for human safety.  And contrary to Judge Beckerman's finding, defendant *has* engaged in an act of vandalism and property damage before.  If he is willing to set fire to an occupied federal courthouse, he poses a significant danger to the public that this Court simply cannot ignore.

## III.   CONCLUSION

Defendant engaged in dangerous, violent, and troubling behavior that put the lives of federal law enforcement officers at risk.  None of the statutory factors in 18 U.S.C. § 3142(g) weigh in favor of his release.  He poses both a risk of flight and a clear danger to

the community.  The magistrate judge's release order should be revoked.  Defendant should

remain in custody pending trial.

DATED:  July 13, 2020.                                    Respectfully submitted,

                                                          BILLY J. WILLIAMS
                                                          United States Attorney

                                                          */s/ Gary Y. Sussman*
                                                          GARY Y. SUSSMAN, OSB 873568
                                                          Assistant United States Attorney